UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **G&G CLOSED-CIRCUIT EVENTS, LLC,** § § § | |
| *Plaintiff*, § § | |
| v. § § § | No. 3:24-CV-00408-LS |
| **KELPIM, INC., D/B/A COCONUTS WING CANTINA, MICHAEL BOREN, and RAUL PIMENTAL,** § § § § § | |
| *Defendants*. § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff G&G Closed-Circuit Events, LLC, sued Defendants Kelpim, Inc., Michael Boren, and Raul Pimental for violations of the Federal Communications Act ("FCA").[1] Plaintiff's motion for summary judgment[2] is before the Court and Defendants failed to respond. The motion is granted.

**I.    LEGAL STANDARD.**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[3] To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense or, if the crucial issue is one for which the non-moving party will bear the burden of proof

---

[1] ECF No. 1.
[2] ECF No. 23.
[3] Fed. R. Civ. P. 56.

at trial, merely point out that the record evidence cannot prove this essential element of the nonmovant's claim or defense.[4]

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.[5] Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"[6] and neither will "only a scintilla of evidence" meet the nonmovant's burden.[7] Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[8] The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[9]

For a court to conclude that there are no genuine issues of material fact, it must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant.[10] In making this determination, the court should review all record evidence, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."[11] The Court "may not make credibility determinations or weigh the

---

[4] *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[5] *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[6] *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).
[7] *Little*, 37 F.3d at 1075.
[8] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).
[9] *Little*, 37 F.3d at 1075.
[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[11] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (quoting 9A *Wright & Miller's Federal Practice and Procedure* § 2529 (2d ed. 1995)).

evidence" in ruling on a motion for summary judgment[12] and must review all facts in the light most favorable to the nonmoving party.[13]

## II.    ANALYSIS.

Plaintiff alleges that Defendants violated either 47 U.S.C. § 553 or § 605.[14] Plaintiff provides an affidavit from its attorney, Thomas P. Riley, who asserts that the broadcast fight at issue was transmitted via satellite.[15] Thus, § 605, which governs communications by wire or radio, governs here.[16] 47 U.S.C. § 605(a) prohibits an unauthorized person from "intercept[ing] any radio communication and divulg[ing] or publish[ing] the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person." This is a strict liability statute and only requires that the plaintiff show (1) that the broadcasted event in question was shown at the defendants' establishment, and (2) the plaintiff did not authorize the broadcast.[17]

### A.    Liability

#### 1.    Defendant Kelpim, Inc.

Plaintiff's contract regarding the Saul "Canelo" Alvarez and Caleb Plant fight, which occurred on November 6, 2021 (the "Event"),[18] provides that Plaintiff had the exclusive license to televise the Event within the United States at non-residential locations.[19] Defendant Kelpim, Inc. ("Kelpim"), operates as Coconuts Wing Cantina (the "Establishment").[20] Plaintiff's auditor, Hiloa

---

[12] *Id.* at 150.
[13] *First Colony Life Ins. v. Sanford*, 555 F.3d 177, 180 (5th Cir. 2009).
[14] ECF No. 23 at 1–2.
[15] ECF No. 23-1 at 8.
[16] 47 U.S.C. § 605(a); *J&J Sports Prods., Inc. v. Mandell Fam. Ventures, L.L.C.*, 751 F.3d 346, 351–53 (5th Cir. 2014) (stating that § 553 only covers the receipt of cable communications, while § 605 only covers the receipt of communications through the air via radio).
[17] *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 753 (S.D. Tex. 2014); *J&J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A–13–CA–824–SS, 2014 WL 1092177, at *1 (W.D. Tex. Mar. 19, 2014).
[18] ECF No. 23-1 at 17–28.
[19] *Id.* at 17.
[20] ECF No. 1 at 2; ECF No. 9 at 1.

Jimenez, was inside the Establishment on November 6, 2021, and observed the Event being played on televisions inside.[21] Plaintiff's photographs also show the Establishment broadcasting the Event on the date in question.[22] Mr. Riley's affidavit asserts that Kelpim was not authorized to receive and broadcast the Event.[23] Finally, Plaintiff attaches an email from a DirectTV agent reflecting that Kelpim only had a residential account and had no license to show the Event in a non-residential establishment.[24] As Defendants failed to respond, Plaintiff's summary judgment evidence establishes Kelpim's liability.

### 2. Defendants Michael Boren and Raul Pimental

47 U.S.C. § 605 allows for vicarious liability of individuals when the individual "(1) had the right and ability to supervise the unauthorized activities of the establishment in those activities and (2) an obvious and direct financial interest in those activities."[25] In his responses to Plaintiff's requests for admission, Michael Boren confirmed that he was the president and director of Kelpim on the date of the Event, that he had the right to supervise the Establishment's activities, and he had a financial interest in the activities therein.[26] Boren's interrogatory answers also reflect that his role in Kelpim was to direct or coordinate Kelpim's activities and operations.[27]

Similarly, Pimental admitted that he was an officer of Kelpim with the right and ability to supervise the activities of the Establishment and a financial interest in its activities.[28] Boren identified Pimental as the vice-president of Kelpim[29] and Kelpim's interrogatory answers reflect

---

[21] ECF No. 23-1 at 30–31.
[22] *Id.* at 32–39.
[23] *Id.* at 9.
[24] *Id.* at 43–45.
[25] *152 Bronx, L.P.*, 11 F. Supp. 3d at 753 (quoting *Joe Hand Promotions, Inc. v. Ambiente Bar LLC*, No. 7:13–CV–132, 2014 WL 580767, at *2 (S.D. Tex. Feb. 13, 2014)).
[26] *Id.* at 63–64.
[27] *Id.* at 88.
[28] *Id.* at 70–71.
[29] *Id.* at 88.

that Pimental had an ownership interest in and control of the Establishment on the date in question.[30] Finally, Pimental's interrogatory answers reflect that he directs and coordinates Kelpim's activities and operations.[31] As Defendants failed to respond, this competent summary judgment evidence establishes that Boren and Pimental had the right and ability to supervise the Establishment's activities on the night in question and had a financial interest in them. Accordingly, they are held vicariously liable for the § 605 violations.

### B.    Damages

Plaintiff seeks $10,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II),[32] willfulness damages under 47 U.S.C. § 605(e)(3)(c)(ii),[33] and attorney's fees under 47 U.S.C. § 605(e)(3)(B)(iii).[34]

Under 47 U.S.C. § 605(e)(3)(C)(i)(II), an aggrieved party "may recover an award of statutory damages" for a violation of 47 U.S.C. § 605(a) "in a sum of not less than $1,000 or more than $10,000, as the court considers just." Many courts start with what the defendants would have been paid for the cost of the broadcast's licensing fee.[35] In this case, Ms. Jimenez's affidavit suggests that with the Establishment's eighty-person capacity[36] the Defendants would have had to

---

[30] *Id.* at 81–82.
[31] *Id.* at 96.
[32] ECF No. 23 at 14–15.
[33] *Id.* at 18–20.
[34] *Id.* at 20.
[35] *See, e.g.*, *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008) (assigning statutory damages in an amount treble to what the defendant would have paid); *Ent. By J&J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (looking at the amount the defendant would have paid and then increasing the amount to deter future violations); *Joe Hand Promotions, Inc. v. Pistoleros del Adobe Horse Shoe Cantina & Grill LLC*, No. EP-23-CV-419-KC, 2024 WL 4376121, at *3 (W.D. Tex. Sept. 25, 2024) (starting the analysis by using the licensing fee and then increasing the damages afterward).
[36] ECF No. 23-1 at 30.

pay $1,250 to show the Event.[37] The Court considers it appropriate to triple this sum so as to generate a statutory damages figure of $3,750.

As for willful damages, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages."[38] Mr. Riley's affidavit states that, in order for an establishment to receive a broadcast like this one without authorization, "there must be some wrongful action for this to happen, such as using an unauthorized decoder or satellite access card."[39] Additionally, there is evidence that the violation was for the purpose of commercial advantage or financial gain, as Defendants advertised the Event on social media.[40] Accordingly, the Court will award willfulness damages.

Generally, in assessing willfulness damages, courts consider "whether the defendants have violated the FCA before, whether they advertised the event, whether they charged an entry fee, whether they sold food and drinks to patrons, and the number of televisions they used."[41] An award should be "sufficient to deter . . . piracy" but not "so high as to drive the actor out of business."[42] In this case, there was no cover charge and it appears that drinks were sold.[43] There were multiple televisions in the Establishment, but the Event was only broadcast on three or four of them.[44] Approximately thirty-three to forty-five people were in the Establishment when Plaintiff's auditor was there.[45] In a similar case where there was no cover charge, roughly thirty patrons viewed the

---

[37] *Id.* at 41.
[38] 47 U.S.C. § 605(e)(3)(C)(ii).
[39] ECF No. 23-1 at 11.
[40] *Id.* at 119–122.
[41] *Pistoleros del Adobe Horse Shoe Cantina & Grill LLC*, 2024 WL 4376121, at *4.
[42] *J&J Sports Prods., Inc. v. Bermudez*, No. SA-17-CV-387-XR, 2017 WL 4448244, at *5 (W.D. Tex. Oct. 5, 2017).
[43] ECF No. 23-1 at 30–39.
[44] *Id.* at 35–39.
[45] *Id.* at 30.

6

Event, and there was no allegation that the defendant was a repeat offender, a court found it appropriate to award three times the statutory damages amount.[46] The Court finds this reasonable and will award $11,250 in willfulness damages.

With respect to Plaintiff's request for attorney fees, the Court shall award "reasonable attorneys' fees to an aggrieved party who prevails."[47] Plaintiff may make a motion for attorney's fees no later than 14 days after entry of judgment, as allowed by the Federal Rules of Civil Procedure.[48]

### C.     Counterclaims

Defendants filed counterclaims against Plaintiff for breach of contract, fraud, and civil RICO Act violations.[49] Plaintiff moved to dismiss these claims,[50] and the Court granted the motion to dismiss as to the RICO violations but not as to the breach of contract or fraud claims.[51] Peculiarly, Plaintiff does not seek summary judgment on these counterclaims. Still, courts may grant summary judgment *sua sponte* with prior notice to the affected party.[52]

Defendants assert with respect to their breach of contract claim that they paid Plaintiff the broadcast fee to show the fight but did not get access to it.[53] As explained above, however, Plaintiff's summary judgment evidence reflects that the Event was indeed shown in the Establishment on the date in question. Defendants also assert that they used an international broadcast from Azteca TV[54] but Plaintiff explains that this is false because the SHOWTIME-PPV

---

[46] *J&J Sports Prods., Inc. v. Beck*, No. L–13–57, 2013 WL 5592333, at *3 (S.D. Tex. Oct. 9, 2013).
[47] 47 U.S.C. § 605(e)(3)(B)(iii).
[48] *See* Fed. R. Civ. P. 54(d)(2).
[49] ECF No. 8 at 3–5; ECF No. 9 at 3–5; ECF No. 10 at 3–5.
[50] ECF No. 12.
[51] ECF No. 18.
[52] *Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir. 1994).
[53] ECF No. 8 at 3–4; ECF No. 9 at 3–4; ECF No. 10 at 3–4.
[54] ECF No. 8 at 2–3; ECF No. 9 at 2–3; ECF No. 10 at 2–3; ECF No. 23 at 9.

7

logo is displayed on the broadcast, not the Azteca TV logo.[55] Indeed, Plaintiff's photos clearly show that the SHOWTIME-PPV logo is displayed on the Establishment's televisions[56] and the Plaintiff had the exclusive license for SHOWTIME-PPV telecast.[57] Finally, Defendants assert they received access to the Event at the Establishment when the eighth round started[58] but Plaintiff's auditor saw the first round in the Establishment.[59] In the absence of any response to Plaintiff's summary judgment evidence and the subject summary judgment motion, Defendants' breach of contract claims fail.

Similarly, as to their fraud claim, Defendants assert that Plaintiff "has attempted to collect sums through coercive means" by claiming Plaintiff had evidence that Defendants broadcasted the event without permission, by declining to show such evidence to Defendants, and then by filing this lawsuit.[60] As Plaintiff's unchallenged summary judgment evidence establishes Defendants' liability, however, this claim fails as well.

### III.    CONCLUSION.

For the foregoing reasons, Plaintiff G&G Closed-Circuit Events, LLC's motion for summary judgment [ECF No. 23] is granted. Plaintiff is awarded $15,000 in damages.

Defendants Kelpim, Inc., Michael Boren, and Raul Pimental have **10 days** from the date of this order to seek summary judgment on their counterclaims against Plaintiff. Failure to do so will result in the dismissal of the counterclaims and the entry of final judgment.

---

[55] ECF No. 23 at 9.
[56] ECF No. 23-1 at 36–38.
[57] *Id.* at 17.
[58] *Id.* at 47.
[59] *Id.* at 30.
[60] ECF No. 8 at 4–5; ECF No. 9 at 4–5; ECF No. 10 at 4–5.

**SO ORDERED**.

**SIGNED** and **ENTERED** on December 8, 2025.

                                                **LEON SCHYDLOWER**
                                                **UNITED STATES DISTRICT JUDGE**